IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENVILLE DIVISION

| | | |
|---|---|---|
| Lena Robin Smart, | ) | Case No. 8:14-cv-04633-BHH-JDA |
| | ) | |
| Plaintiffs, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

1

**PROCEDURAL HISTORY**

On October 27, 2011, Plaintiff filed applications for DIB and SSI alleging disability beginning July 31, 2011. [R. 136–137, 138–147.] The claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. z64–89, 91–114.] Plaintiff requested a hearing before an administrative law judge ("ALJ") and on March 28, 2013, ALJ Ann G. Paschall conducted a hearing on Plaintiff's claim. [R. 44–61.]

The ALJ issued a decision on August 8, 2013, finding Plaintiff not disabled. [R. 21–37.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015, and had not engaged in substantial gainful activity since July 31, 2011, the alleged onset date. [R. 23, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc and degenerative joint disease of the cervical and lumbar spine, bilateral hearing loss status post cochlear implant surgery, bilateral carpal tunnel syndrome status post release surgeries, and migraine headaches. [R. 23–24, Finding 3.] The ALJ also noted that Plaintiff had the following non-severe impairments: a history of slight degenerative change in the distal interphalangeal joint of the right great toe, diverticula, irritable bowel syndrome, menorrhagia, granulomatous disease with calcified nodules in the left lung and calcified hilar lymph nodes, remote injuries resulting from motor vehicle accidents, cerebral contusion, hypertension, osteoarthritis, pneumonia, bronchitis, benign nevus, urinary tract

---

[3] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

infection, and tonsillectomy. [R. 25.] The ALJ found that these impairments have been controlled with medication and/or other conservative measures and have not resulted in any lasting limitation of her ability for basic work-related activities. [*Id*.] The ALJ also found that while Plaintiff claimed to have a seizure disorder, there was not medical evidence establishing seizure activity or significant treatment during th time period in question. [R. 26.] The ALJ, however, accounted for this issue in evaluating Plaintiff's environmental and other work restrictions. [*Id*.] And while Plaintiff testified that she had a past closed head injury that interfered with her memory, the ALJ determined there was no evidence that Plaintiff has been treated for any residual problems related to that injury and there was no evidence of intracranial trauma; thus, the ALJ found Plaintiff did not have a severe impairment related to her remote cerebral contusion. [*Id*.] Further, while Plaintiff alleges an impairment of fibromyalgia, the ALJ found that, applying the criteria of SSR 12.2, Plaintiff does not have medically determinable fibromyalgia. [R. 27.] Lastly, the ALJ notes that Plaintiff has a very remote history of adolescent adjustment reaction/depression and personality disorder, but that there is no evidence indicating that she received treatment for or has been diagnosed with any mental impairment since becoming an adult; accordingly, Plaintiff was not found to have a medically determinable mental impairment. [*Id*.]

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [R. 27, Finding 4.] The ALJ expressly considered Listing 1.04 with respect to Plaintiff's spinal impairments,

3

Listing 2.11 with respect to Plaintiff's hearing loss, and Listing 11.14 with respect to

Plaintiff's carpal tunnel issues. [R. 27–28.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the

ALJ found Plaintiff retained the following residual functional capacity ("RFC")

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with certain additional limitations. Specifically, the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit, stand, and walk for up to 6 hours each out of an 8-hour workday.  The claimant can occasionally use hand controls with the right dominant hand. The claimant can never use ladders. The claimant can occasionally use stairs, crouch, crawl, and stoop. The claimant can frequently kneel.  The claimant can reach overhead occasionally with the bilateral upper extremities. The claimant can frequently handle and feel with the right upper extremity. The claimant must avoid concentrated exposure to extreme heat and extreme cold, loud noises, dangerous machinery, and unprotected heights.  The claimant will need to supplement hearing with lip reading, which requires that she be able to see the person to whom she is talking whenever communicating verbally.

[R. 28.]

At Step 4, the ALJ noted Plaintiff was unable to perform any of her past relevant

work as a nursing assistant.  [R. 36, Finding 6.]  Considering Plaintiff's age, education,

work experience, RFC, and the testimony of a vocational expert, the ALJ determined that

there are  jobs that exist in significant numbers in the national economy that Plaintiff can

perform.  [R. 36, Finding 10.]  On this basis, the ALJ found Plaintiff had not been under a

disability as defined by the Act from July 31, 2011, through the date of the decision.  [R.

37, Finding 11.]

4

Plaintiff requested Appeals Council review of the ALJ's decision and the Council declined review.  [R. 1–7. ] Plaintiff filed this action for judicial review on December 7, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary because the ALJ improperly rejected the opinions of Plaintiff's treating physicians, the ALJ failed to perform a function-by-function assessment in analyzing Plaintiff's RFC, and the Appeals Council failed to consider and weigh new and material evidence. [Doc. 11.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that the ALJ properly considered and weighed the opinion evidence of record, the ALJ properly determined Plaintiff's RFC, and the Appeals Council properly concluded that there was no reasonable possibility that the evidence presented would affect the ALJ's decision. [Doc. 12.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687

5

(S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear

disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its

7

reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

8

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g., Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

**I.    The Five Step Evaluation**

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).    The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.    20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.    *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).    The claimant must prove disability on or before the last day of her insured status to receive disability benefits.    *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).    If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.    *Grant*, 699 F.2d at 191.    If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.    20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined

11

impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could

---

[5] The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6] Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the

treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d).

15

However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the

16

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weighing of Opinion Evidence**

Plaintiff contends the ALJ erred in evaluating the opinions of Dr. Westmoreland and Christopher Chittum, M.D., ("Dr. Chittum") by making conclusions that call for medical expertise which led to an incomplete and inaccurate assessment of Plaintiff's RFC. [Doc. 11 at 34.] Plaintiff contends the ALJ's rejection of Dr. Westmoreland's opinion is "unreasonable in light of the record evidence." [Doc. 11 at 24.] Specifically, Plaintiff argues Dr. Westmoreland's opinion is consistent with Plaintiff's treatment record and consistent with Dr. Chittum's opinion. [*Id*. at 24–25.] Plaintiff also argues that Dr. Chittum's opinion was supported by the record. [Id. at 31.] Plaintiff suggests that the non-examining physician opinions can not be given weight because they are not based on all of the medical evidence, including limitations found by other doctors. [*Id*. at 25.]

The Commissioner, on the other hand, contends the ALJ's opinion is supported by substantial evidence. [Doc. 12 at 6.] The Commissioner argues that Dr. Westmoreland's statement that Plaintiff was "disabled" due to back problems and Dr. Chittum's suggestion

19

that Plaintiff could not concentrate long enough to work an eight-hour day are not entitled to any significant weight as a matter of law as the determination of disability is reserved to the Commissioner. [Id. at 7.]  The Commissioner also argues that the remainder of Drs. Westmoreland and Chittum's opinions were inconsistent with the record as a whole. [*Id.* at 8–10.]   The Commissioner takes the position that the ALJ fully assessed Plaintiff's capacity to perform relevant functions in this case and, thus, the RFC is proper.  [Doc. 12 at 13.]

In considering medical source opinions, such as treating physicians, the ALJ is obligated to evaluate and weigh these medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).   Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."   20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2).  Additionally, Social Security Ruling ("SSR") 96-2p requires

that an ALJ give specific reasons for the weight given to a treating physician's medical

opinion:

> [A] finding that a treating source medical opinion is not well
> supported by medically acceptable clinical and laboratory
> diagnostic techniques or is inconsistent with the other
> substantial evidence in the case record means only that the
> opinion is not entitled to "controlling weight," not that the
> opinion should be rejected.  Treating source medical opinions
> are still entitled to deference and must be weighed using all of
> the factors provided in 20 C.F.R. 404.1527 and 416.927. In
> many cases, a treating source's opinion will be entitled to the
> greatest weight and should be adopted, even if it does not
> meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating

source is entitled to deference:

> Medical sources often offer opinions about whether an
> individual who has applied for title II or title XVI disability
> benefits is "disabled" or "unable to work," or make similar
> statements of opinions.  In addition, they sometimes offer
> opinions in other work-related terms; for example, about an
> individual's ability to do past relevant work or any other type of
> work.  Because these are administrative findings that may
> determine whether an individual is disabled, they are reserved
> to the Commissioner.  Such opinions on these issues must not
> be disregarded.  However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e),

416.927(e) (stating an ALJ does not have to "give any special significance to the source

of an opinion on issues reserved to the Commissioner," such as an opinion that the

claimant is disabled, the claimant's impairment or impairments meets or equals a listing,

or the claimant has a certain residual functional capacity).

21

### *Medical History*

Plaintiff alleges disability due to chronic migraines, loss of hearing, seizures, spinal cord damage, bulging disc, and menstrual cycle problems. [R. 169.]

Treatment notes indicate Plaintiff saw Dr. Husam Mourtada ("Dr. Mourtada") of Regional Spine and Pain Management on July 7, 2010 on referral.  [R. 324.]  On physical exam, Plaintiff had severe tenderness over both sacroiliac ("SI") joints with full range of motion of the lumbar spine ("L spine") and increasing tenderness over the upper medial trazpezius muscle bilaterally.  [R. 326.]  Motor strength was 5/5 for major muscles of both lower extremities ("LE's") and upper extremities ("UE's") with no focal sensory deficits. [*Id*.] Straight leg raises and Spurling test were negative bilaterally.  [*Id*.] Plaintiff underwent a trigger point injection to the upper medial trapezius.  [*Id*.] On August 19, 2010, Plaintiff saw Dr. Mark Hicklin ("Dr. Hicklin") at Westmoreland, Coley, and Gainey for a work physical.  [R. 321.]   Treatment notes indicate that Plaintiff's hypertension was relatively well-controlled and, beyond that, she had chronic migraines and chronic neck and low back pain . [*Id*.] On physical exam, Plaintiff had generally normal findings, including no dubbing, cyanosis, edema, or deformity with full range of motion of all joints.  [R. 322.]

On September 2, 2010, Plaintiff again saw Dr. Mourtada indicating that the previous bilateral SI injection and bilateral upper medial trapezius trigger point injection helped, and she reported no pain that day.  [R. 317.]  On physical exam, Plaintiff had no tenderness over both SI joints with full Range of motion of the L spine. [R. 319.] Plaintiff had mild tenderness over the upper medial trapezius muscle bilaterally.  [*Id*.]  Motor strength was 5/5 for major muscles of both UE's with no focal sensory deficits.  [*Id*.]  On October 11,

22

2010, however, Plaintiff returned to Dr. Mourtada having increased pain between scapulas when she looked down and experienced some pain over the SI joints.  [R. 313.]  On physical exam, Plaintiff had mild tenderness over both SI joints with full Range of motion of the L spine; mild tenderness over the upper medial trapezius muscle bilaterally; and local tenderness over the thoracic paraspinal muscles in between the scapulas. [R. 315.] Plaintiff had 5/5 motor strength in the major muscles for both LE's and UE's  with no focal sensory deficits and negative Spurling test.  [*Id*.]  Dr. Mourtada recommended massaging, stretching and Flector patches.  [*Id*.]

On November 8, 2010, Plaintiff returned to Dr. Mourtada indicating the Flector patches did not help her pain symptoms.  [R. 309.]  Plaintiff still experienced pain between scapulas when she looked down and also had pain over the SI joints; there was no radiation, tingling, or numbness with the pain.  [*Id*.]  On physical exam, Plaintiff showed tenderness over both SI joints with full Range of motion of the L spine, mild tenderness over the upper medial trapezuis muscle bilaterally, and local tenderness over the thoracic paraspinal muscles in between the scapulas (worse on the left), with more pain when bending her cervical spine.  [R. 311.]  Plaintiff exhibited 5/5 motor strength in the major muscles of both LE's and UE's with no focal sensory deficits in the LE's or UE's.  [*Id*.] Straight leg raises and Spurling test were negative bilaterally.  [*Id*.]  Plaintiff was again treated with a trigger point injection.  [R. 312.]

On January 6, 2011, Plaintiff returned to Dr. Mourtada on follow up.  [R. 305.]  On physical exam, Plaintiff exhibited severe tenderness over both SI joints with limited Range of motion of the L spine; and severe tenderness over the upper trapezius muscle

23

bilaterally. [R. 307.] Plaintiff also had focal tenderness over the thoracic paraspinal muscles in between the scapulas. [*Id*.] Plaintiff's motor strength in the major muscles for both LE's and UE's was 5/5, with no focal sensory deficits. [*Id*.] Straight leg raises were negative bilaterally. [*Id*.] Dr. Mourtada recommended that Plaintiff "[s]tart PT ASAP" and instructed her to try NSAIDS in addition to other medication she was taking. [*Id*.]

Plaintiff saw Dr. Westmoreland on follow up on February 7, 2011. [R. 300.] Dr. Westmoreland took over management of Plaintiff's pain medication to keep it under one roof. [*Id*.] On physical exam, Dr. Westmoreland noted severe tenderness over both SI joints with limited Range of motion of the L Spine; severe tenderness over the upper medial trapezuis muscle bilaterally; and focal tenderness over the thoracic paraspinal muscles in between the scapulas. [R. 302.] Plaintiff's motor strength in the major muscles of her UE's and LE's was 5/5 and straight leg raises were negative bilaterally. [*Id*.] Dr. Westmoreland discussed with Plaintiff the importance of regular exercise and recommended her starting or continuing a regular exercise program. [R. 304.] Dr. Westmoreland also recommended Plaintiff limit activity to comfort and avoid activities that increase discomfort. [*Id*.] Plaintiff was also directed to follow physical therapy neck recommendations per the pain management specialist. [*Id*.]

On March 24, 2011, Plaintiff saw Dr. Mourtada regarding her SI joint pain. [R. 298.] Again, Plaintiff's motor strength was 5/5 in the major muscles in the LE's and UE's, and her straight leg raises were negative bilaterally. [*Id*.] Plaintiff indicated she was not interested in a surgical consult. [R. 299.] Plaintiff presented to Dr. Mourtada again on April 21, 2011, complaining of worsening pain over the upper medial trapezuis and neck muscles with

24

occasional radiation/tingling and numbness in the UE's, worse on the right. [R. 290.] Plaintiff also experienced pain across the lower lumber spine with no radiation, tingling or numbness. [*Id*.] Plaintiff's motor strength was 5/5 in the major muscles in the LE's and UE's, and her straight leg raises were negative bilaterally. [*Id*.] Dr. Mourtada ordered a trigger point injection to the bilateral upper medial trapezuis. [R. 294.] Treatment notes indicate that a 2008 MRI showed broad-based disc protrusion with severe spinal stenosis and moderate to severe right neural foraminal stenosis at C5-C6; and moderate spinal stenosis at C6-C7. [R. 295.] Because the pain was getting worse, Dr. Mourtada ordered a CT scan of the C & L spine, with contrast. [*Id*.] The CT of the neck on April 27, 2011 degenerative changes in the cervical spine. [R. 288.] The CT of the lumbar spine was negative for fracture and showed no acute findings; however, there were mild bony degenerative changes and bulging degenerative discs at L3-L4, L4-L5, and L5-S1. [R. 290.] Some SI joint sclerosis was also noted, as well as mild bony degenerative change with anterior osteophytes. [*Id*.]

On May 20, 2011, Plaintiff returned to Dr. Westmoreland on follow up for meds. [R. 283.] On physical exam, Plaintiff had severe tenderness over both SI joints with limited Range of motion of the L spine, and severe tenderness over the upper medial trapezius muscle bilaterally. [R. 285.] She also had focal tenderness over the thoracic paraspinal muscles in between the scapulas. [*Id*.] Plaintiff's motor strength was 5/5 in the major muscles in the LE's and UE's, and her straight leg raises were negative bilaterally. [*Id*.] On September 23, 2011, Plaintiff saw Dr. Westmoreland on consultation to talk about her physical problems and whether or not to file for disability. [R. 277.]

25

On December 15, 2011, Plaintiff presented to Certified Physician Assistant Chalmers Mills ("Mr. Mills") of Upstate Spine and Neurosurgery Center, to discuss study results from diagnostic tests including CT/Myelogram of the cervical and lumbar spines performed on December 11, 0215.  [R. 348; *see also* R. 350–357.]  Plaintiff's mental status exam showed she was oriented x3 with appropriate mood and affect.  [*Id*.]  On physical exam, Plaintiff had normal gait and station; normal strength in all muscles with the exception of mild decreased grip strength on the right; mild and generalized tenderness to inspection and palpation; and marked, guarded restriction in Range of motion due to pain. [*Id*.]   Results of the cervical CT and myelogram showed degenerative changes and apparent fusion of C1 to skull base; bone formation on the anterior ring of C1 and some deformity of the adontoid possible indicative of old injury); angulation of C1-2 level to left (would explain Plaintiff's left head tilt); kyphotic angulation of lower cervical spine with large osteophyte bridging from inferior end plate of C5 to superior end plate of C7 (would explain lack of extension of neck); and, no overt spinal cord or nerve root compression noted.  [R. 349.]  Mr. Mills noted that he did not feel surgery would be of benefit in the cervical spine, but that the findings explained Plaintiff's chronic pain and range of motion.  [*Id*.]  Mr. Mills further noted that the degenerative disc disease at L5/S1 could be a cause of Plaintiff's chronic lower back pain.  [*Id*.]  Mr. Mills noted that Plaintiff had decreased low back pain in the past when wearing a brace, but would give more thought to post lumbar interbody fusion at L5/S1 if the brace did not help.  [*Id*.]

Plaintiff did not see Dr. Westmoreland again after her September 2011consultation [*see* R. 344 (Request for medical records dated January 24, 2012 indicating no visit since

September 23, 2011)] until January 30, 2012 [R. 448]. Plaintiff complained of headache, visual acuity difficulties, and chronic pain from her lumbar and cervical disc disease. [*Id*.] Plaintiff indicated she was seeing neurosurgery because of her pain. [*Id*.] On physical exam, Plaintiff's motor strength was 5/5 in the major muscles in the LE's and UE's, her straight leg raises were negative bilaterally, and she had no focal sensory deficits in LE or UE. [*Id*.] On February 13, 2012, Plaintiff saw Dr. Westmoreland indicating that she was seeing neurosurgery in "preparation for fusion lumbar spine." [R. 443.] Plaintiff saw Dr. Westmoreland several times between February and June 2012 with similar pain complaints. [R. 425–442.]

On October 6, 2012, Dr. Chittum signed a statement indicating that he first saw Plaintiff on December 16, 2011 and last on February 8, 2012. [R. 454.] Dr. Chittum opined:

> [Plainitff] suffers from pain in her lumbar and cervical spine. We performed myelograms of her lumbar spine. She could not have an MRI because of her cochlear implant. The myelogram showed that she has degenerative disc disease in her lumbar spine and some spondylosis. Myelograms do not show nerve root impingement as clearly as an MRI. However, we presume there is a compression there based on her spondylosis. You can insinuate there is impingement there because the space is narrowed. On clinical examination she had limited range of motion in her lumbar spine with guarding and tenderness to palpation in that area. We thought surgery might improve her condition because a back bracing trial had helped her significantly. She decided to pursue pain management. This is not an unreasonable decision given the serious risks involved with back surgery and the fact that there is no guarantee of success.
>
> Her neck myelogram showed evidence of past trauma and loss of the cervical lordosis. She has degenerative disc disease and osteophytes throughout her cervical spine. On clinical

27

examination she had a lot of muscle spasms in the neck area and guarding. She has severely restricted range of motion in her neck. She has mildly decreased strength in her right arm. Her complaints of neck pain are highly consistent with her testing and clinical examination.

Based on her myelograms and consistent clinical examination, Ms. Smart would be limited to no more than sedentary work with sedentary work defined as being able to stand or walk in combination to no more than 2 hours total out of an 8 hour work day. She would suffer interruptions to her concentration sufficient to frequently interrupt tasks throughout the work day even at a sedentary job due to her back and neck pain. It is most probable she would suffer interruptions to her concentration sufficient to frequently interrupt tasks throughout the work day.

[R. 545.]

On May 6, 2013, Dr. Westmoreland signed off on a statement intended to set out his opinion and the basis for his opinion. [R. 596.] Dr. Westmoreland opined that Plaintiff has some very serious conditions, including lower back and cervical spine impairments, which are confirmed by X-rays and MRI's showing spondylosis and suggesting nerve root impingement and muscle spasms. [R. 597.] Dr. Westmoreland pointed out that Plaintiff had taken narcotics for a long time and had become habituated to them, requiring increasingly higher dosages to control pain. [*Id*.] Based on her medication usage, Dr. Westmoreland opined Plaintiff would not "be able to attend any kind of activity for eight hours without having to stop and lie down for several hours during an eight hour period." [*Id*.]

### *ALJ's Weighing of Medical Evidence*

Upon examining the medical evidence of record, and summarizing the same [R. 24–27, 29–33], the ALJ explained his consideration of the opinion evidence [R. 33–36].

28

Specifically, with respect to the opinions of Drs. Westmoreland and Chittum, the ALJ explained:

> Through a May 16, 2013 statement prepared by the claimant's representative, Dr. Westmoreland indicated that the claimant was "disabled" due to pain related to her cervical and lumbar problems. This statement also provides that the claimant required chronic narcotic medication treatment. This document states: "[The claimant] is not going to be able to attend any kind of activity for eight hours without having to stop and lie down for several hours during any eight hour period." Dr. Westmoreland also indicated that the claimant has "some problems with understanding speech" (24F). I have given Dr. Westmoreland's conclusions little weight, as they are inconsistent with his treatment notes and the other medical evidence in the record. As previously discussed, with the exception of some tenderness and restricted range of motion in the back and neck, the claimant has repeatedly had generally normal physical examinations at Dr. Westmoreland's practice. Specifically, she has exhibited normal extremities, with full range of motion in all joints. She also exhibited full motor strength of 5/5 for all major muscles in the bilateral upper and lower extremities. She had no focal sensory deficits and negative straight leg raises bilaterally. She exhibited deep tendon reflexes of 1 +/4 (7F/2-3, 9, 18, 22, 26, 31, 35; 16F/5, 14-15, 20-21, 27; 18F/8).

> In an October 6, 2012 statement, Christopher Chittum, M.D., of Upstate Spine & Neurosurgery, stated:

>> Based on her myelograms and consistent clinical examination, [the claimant] would be limited to no more than sedentary work with sedentary work defined as being able to stand or walk in combination to no more than 2 hours total out of an 8 hour work day. She would suffer interruptions to her concentration sufficient to frequently interrupt tasks throughout the work day even at a sedentary job due to her back and neck pain. It is most probable she would suffer interruptions to her concentration sufficient to frequently interrupt tasks throughout the work day.

29

(19F). I have given Dr. Chittum's conclusions little weight, as they are also inconsistent with the record, including the treatment notes from Upstate Spine & Neurosurgery. As discussed, those records indicate that, with the exception of the right upper extremity, the claimant had normal strength throughout. She also exhibited a normal gait and station and negative straight leg raising tests (11F/2-6; 13F/2-3; 19F; 23F/5). Dr. Chittum's conclusions are also inconsistent with the evidence of the claimant's extensive activities. As discussed, the claimant has worked during the period at issue, including providing home healthcare services (3D/15-16). She also acknowledged that she provided childcare, prepared meals daily, cleaned, washed laundry, ironed, drove, read, scrapbooked, played games with her son, and attended church ( 4E).

[R. 34.]

### Discussion

The law is clear that, even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. §§ 404.1527(c)(1)–(5), 416.927(c)(1)–(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96–2P, 61 Fed.Reg. 34490, 34492 (July 2, 1996). Further, the Commissioner is obligated to consider information provided by other professional health care providers not technically falling within the Social Security definition of an "acceptable medical source," such as therapists, who may be able to provide "valuable functional

30

information" concerning the claimant's condition.    20 C.F.R. §§ 404.1513(a),(d),

416.927(a), (d); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(1) (c).  Measured by these

standards, the ALJ's evaluations of the opinions of Drs. Westmoreland and Chittum are

clearly deficient.

As an initial matter, the ALJ failed to provide any discussion of how he weighed the

factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c).    For instance, it is unclear

whether the ALJ took into account Dr. Chittum's speciality in neurological surgery when

weighing his opinion and/or whether the ALJ took into account the length of the treating

history of either physician.  And while Dr. Westmoreland's treatment notes did consist of

normal findings with respect to muscle strength and lack of sensory deficits, the ALJ does

not explain how these findings contradict or negate Dr. Westmoreland's opinion that

Plaintiff is incapable of attending to activity for 8-hours a day without having to lie down for

several hours as a result of pain and the narcotic medications she takes to control her pain.

Additionally, the ALJ failed to explain how he concluded that Dr. Chittum's opinion that

Plaintiff could stand or walk no more than two hours in an 8-hour day and would suffer

interruptions in concentration due to pain is contradicted by his findings that Plaintiff

exhibited normal strength, gait, and station on a particular visit.  And, while the ALJ

specifically declined to accept Plaintiff's complaints of disabling pain due to her engaging

in work activity during the relevant period, the ALJ failed to explain how Plaintiff's working[8]

---

[8] Plaintiff testified that she worked for one week in April 2012 as a home health care worker at Palmetto Home Care, helping a family with a child diagnosed with Asperger's syndrome.  Plaintiff indicated that, in that position, she worked approximately two hours per day.  [R. 30–31.]  She further acknowledged working in February 2012 for Comfortmax, assisting a child with spina bifida.  She indicated that this work involved wound

31

for two hours per day for a week in 2012, which would be consistent with limitations opined by Drs. Westmoreland and Chittum, cuts against her allegations that she is incapable of working a full 8-hour day.

Additionally, the ALJ clearly did not properly discuss the factors contained in 20 C.F.R. §§ 404.1529(c)(3), 416.927(c)(3)[9] for analyzing subjective complaints of pain. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.927(c)(3) (listing seven factors the ALJ is to consider when evaluating pain since "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone.").  Instead, the ALJ cites to the requirement to address these factors, but merely concludes that Plaintiff's contentions are not wholly credible based on the medical evidence and the fact that there was no mental status exam showing concentration or memory problems.  [R. 30.]  Accordingly, the Court

_____

care/dressing and preparing bathes for the child.  While this work did not constitute substantial gainful activity, it nonetheless supports a finding that the claimant can perform modified light work as set forth above.  [R. 31.]

[9]Factors relevant to symptoms, such as pain, which will be considered include:

(i)      Your daily activities;
(ii)     The location, duration, frequency, and intensity of your pain or other symptoms;
(iii)    Precipitating and aggravating factors;
(iv)     The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)      Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)     Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
vii)     Other factors concerning your functional limitations and restrictions due to pain or other symptoms

20 C.F.R. §§ 404.1529(c)(3), 416.927(c)(3).

is unable to review the ALJ's decision to determine whether it is supported by substantial evidence.

Having reviewed the record evidence, the undersigned finds that remand for further consideration of the record opinions is appropriate. In making this recommendation, the undersigned is mindful it is not to weigh evidence or substitute its judgment for that of the Commissioner, but is to determine whether the ALJ's weighing of the evidence is supported by substantial evidence in the record. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."); *Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir. 1978) ("A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court[.]"); *Arnold v. Sec'y of H.E.W.*, 567 F.2d 258, 259 (4th Cir. 1977) (noting that, unless Commissioner "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.")(internal quotation omitted). Based on the record evidence available, the Court cannot find that the ALJ appropriately weighed and considered the opinions of Drs. Westmoreland and Chittum. Accordingly, the undersigned cannot find the Commissioner's decision is based on substantial evidence. On remand, the expert opinions of the treating physicians should be reviewed under the standards of the Treating Physician Rule and Plaintiff's pain should be evaluated pursuant to the requirements of 20 C.F.R. §§ 404.1529(c)(3), 416.927(c)(3).

33

**Appeals Council–New Evidence**

Plaintiff argues the Appeals Council failed to consider new and material evidence that may have affected the ALJ's decision. [Doc. 11 at 36.] Specifically, Plaintiff provided a statement from Dr. Christopher Rube ("Dr. Rubel") opining that Plaintiff suffered from cervical stenosis, that her low back pain would also cause her to need to change positions frequently, and that she has been limited to this extent since at least August 2012 if not before that time. [*Id*. at 37.] The Commissioner argues remand is not warranted because there is no reasonably possibility that Dr. Rubel's statement would affect the ALJ's decision in this case. [Doc. 12 at 14.]

The law is clear that if a claimant is dissatisfied with an ALJ's decision regarding her entitlement to disability benefits, the claimant may request that the Appeals Council review the ALJ's decision. *See Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (citing 20 C.F.R. § 404.967); *see also* 20 C.F.R. 416.1467. The Appeals Council will grant the request for review if there is an apparent abuse of discretion by the ALJ; if there is an error of law; if the ALJ's action, findings, or conclusions were not supported by substantial evidence; or if the case concerns a broad policy or procedural issue that may affect the general public interest. 20 C.F.R. §§ 404.970, 416.1470. "The regulations also specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council." *Meyer*, 662 F.3d at 705. "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b). "Evidence is new 'if it is not duplicative or cumulative'

34

and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer*, 662 F.3d at 705 (citing *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). If the new and material evidence relates to the period on or before the date of the ALJ's hearing decision, the Appeals Council should evaluate it as part of the entire record. 20 C.F.R. § 970(b).

The Fourth Circuit Court of Appeals' decision in *Bird v. Comm'r of Soc. Sec. Admin*. 699 F.3d 337, 340–41 (4th Cir. 2012), suggests that evidence created after the ALJ's decision may be considered as new and material evidence and given retrospective consideration under certain circumstances. However, retrospective consideration should not be given to the new evidence where there is no support for the existence of impairments or the severity alleged prior to the date of the ALJ's decision. *See Johnson*, 434 F.3d at 655–56.

In determining whether the Commissioner's final decision is supported by substantial evidence and reached through the application of the correct legal standard, the Court must "'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" *Meyer*, 662 F.3d at 704 (alterations in original) (internal citation omitted). If the court cannot determine whether, in light of the additional evidence submitted, the Commissioner's decision is supported by substantial evidence, remand is warranted. *Meyer*, 662 F.3d at 707 (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits). The

35

*Meyer* Court recognized, however, that in some cases the record would clearly show that the additional evidence did not cause the ALJ's decision to be unsupported by substantial evidence. *See id.* (discussing *Smith v. Chater*, 99 F.3d 635, 638–39 (4th Cir.1996)).

### New Evidence Submitted

The Appeals Council received the following additional evidence which was made a part of the record:

> Exh 16E:    Representative brief from Mark Dunning, Esquire dated November 15, 2013.

[R. 6.]  Upon considering the additional evidence, the Appeals Council concluded that it found no reason under the rules to review the ALJ's decision, thus, making the ALJ's decision the final decision of the Commissioner.  [R. 1.]  In addition to the additional evidence included in Exhibit 16E, the Appeals Council also explained that it looked at the medical source statement from Dr. Rubel dated December 3, 2013, and determined that the information was about a later time and, thus, did not affect the ALJ's August 8, 2013 decision regarding disability.  [R. 2.]  Dr. Rubel opined as follows:

> I first treated Lena Smart on 9/24/13.  She has seen my physician's assistant since then.  I have only personally seen her one time.  Ms. Smart suffers from cervical stenosis.  She has cochlear implants so she is not able to have an MRI. However, MRI imaging from 2008 shows a broad-based disc protrusion with severe spinal stenosis and operate to severe right neural foraminal stenosis at C5-C6 and moderate stenosis at C6-C7.  She has a history of AGDF surgery.  This type of surgery is performed to prevent any further damage tot he spinal cord, but it is not necessarily going to correct the nerve damage that has already occurred.  It is a palliative surgery.  Most people who have this type of surgery will continue to have symptoms from the nerve damage that has already occurred.  Based on her clinical history, imaging and consistent clinical examinations, Ms. Smart suffers from

cervical pain that would prevent her from using her arms any more than occasionally during the work day.  Occasionally was defined for me as no more than 1/3 total out of an 8 hour work day.  If she used her arms any more than occasionally, her neck pain would be aggravated to the point where she would start to suffer frequent interruptions to her concentration from neck pain.  She also suffers from degenerative disc disease in her lumbar spine according to a 2008 MRI report.  Her lumbar arthritis would limit her to sedentary work due to her resulting leg pain based on her clinical examination.  On clinical examination she has positive straight leg testing bilaterally.  Based on her clinical examination, her low back pain would also cause her to need to change positions frequently.  She has been compliant with treatment and, based on her clinical history of ACDF surgery, I do not support that she is exaggerating her symptoms.  Based on her clinical history she has been limited to this extent since at least 8/12 if not before that time.

[R. 9.]

### *Discussion*

As stated above, the duty of the Appeals Council to review additional evidence is conditioned on such material being "new and material," which means that it is "not duplicative or cumulative" and "there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d at 95–96.  *Meyer* does not require an automatic remand for unreviewed material evidence, but instead finds that remand is appropriate when the Court cannot determine, from review of the record as a whole, if substantial evidence supports the denial of Plaintiff's application for benefits. *Meyer*, 662 F.3d. at 702.  Because the Court is unable to find that the ALJ's decision is supported by substantial evidence, the ALJ should take Dr. Rubel's opinion into consideration on remand of this matter.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be  REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case be REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

IT IS SO RECOMMENDED.


s/Jacquelyn D. Austin
United States Magistrate Judge

January 27, 2016
Greenville, South Carolina